IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-02404-RMR-NRN

INDIAN HARBOR INSURANCE COMPANY, a Delaware corporation,

Plaintiff,

v.

HOUSTON CASUALTY COMPANY, a Texas corporation,

Defendant.

---

**REPORT AND RECOMMENDATION ON INDIAN HARBOR INSURANCE COMPANY'S PARTIAL MOTION FOR SUMMARY JUDGMENT (Dkt. #26)
and
HOUSTON CASUALTY COMPANY'S CROSS-MOTION FOR SUMMARY JUDGMENT (Dkt. #38)**

---

**N. Reid Neureiter
United States Magistrate Judge**

This matter is before the Court on Indian Harbor Insurance Company's ("Indian Harbor") Partial Motion for Summary Judgment (Dkt. #26) and Houston Casualty Company's (HCC) Cross-Motion for Summary Judgment (Dkt. #38), referred to the Court by Judge Regina M. Rodriguez. (Dkt. ## 31 & 47.) The Court has carefully considered the motions, the responses (Dkt. ##35 & 46), replies (Dkt. ## 45 & 49), and Indian Harbor's surreply. (Dkt. #56.) The Court heard oral argument from the parties on March 17, 2022. (Dkt. #65.) Now, being fully informed and for the reasons set forth below, it is hereby **RECOMMENDED** that and Indian Harbor's motion for partial summary judgment be **DENIED** and HCC's cross-motion for summary judgement be **GRANTED**.

1

## BACKGROUND

This case arises from an insurance coverage dispute because of damage resulting after a subcontractor failed to properly install balconies at an apartment complex. The defective installation of certain balcony components damaged other, nondefective portions of the balcony. Apparently, repairs to the defective components of the balcony necessarily resulted in damage and replacement to the nondefective components. The crucial question before the Court is whether such damage is covered under the commercial general liability ("CGL") policy provided by HCC. When HCC declined coverage, the subcontractor default insurer, Indian Harbor, stepped in to pay for the repairs. Indian Harbor then filed this suit to receive reimbursement from HCC for the costs of repair, investigative costs, and other fees, arguing that the damage should have been covered in the first instance by the CGL policy. HCC, however, maintains that there is no coverage for the repairs to the defective balconies because such damage does not qualify as "property damage" under the CGL policy or Colorado law. So, according to HCC, it owes Indian Harbor nothing.

The following facts are undisputed unless attributed to a specific party or otherwise noted.

**A. The Project and Defective Balconies**

FMFPE LLC (the "Owner") engaged The Weitz Company ("Weitz") as general contractor for the construction of an apartment complex in Fort Collins, Colorado. (Dkt. #26 at 4, ¶ 1.) Weitz retained Tripp Construction ("Tripp" or the "Subcontractor") to construct the balconies for the project, among other work. (*Id.*, ¶ 2.)

HCC issued policy number H16PC30658-00, a commercial general liability policy, to the Owner. (Dkt. #38 at 3, ¶ 3.) This policy provides coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." (*Id.*; Dkt. #26-2, HCC CGL policy). The HCC CGL policy endorsement eliminates standard "your work" and "business risk" exclusions (exclusions j., k., and l. of the policy). (Dkt. #26 at 4, ¶ 6; Dkt. #26-2 at 55–56.) The HCC CGL policy also extends to certain enrolled contractors. (Dkt. #26 at 4, ¶ 5.) Weitz was an enrolled contractor under the HCC policy, as was Tripp. (*Id.* at 5, ¶¶ 7–8.)

Separately, Indian Harbor issued a Subcontractor Default Insurance policy to Weitz. This policy provides for indemnification of "Loss," defined as "costs and expenses paid by [Weitz] to the extent caused by a Default of Performance of a Subcontractor/Supplier under the terms of a Covered Subcontract." (Dkt. #38 at 3, ¶ 2.)

On March 21, 2019, the Owner issued to Weitz a Notice of Claim pursuant to Colo. Rev. Stat. § 13-20-801. (Dkt. #26 at 5, ¶ 11; *see also* Dkt. #26-3, Notice of Claim.) The Notice of Claim explains: "On or about March 18, 2019 [Owner] discovered defects in certain balconies" at the subject property. It continues:

> While the cause of the defects is currently unknown, Weitz . . . may have failed to install flashing on balconies in accordance with the plans and specifications and also may have failed to meet the applicable standard of care in its construction of the balconies. The improperly installed flashing has apparently allowed water to penetrate the first layer of the balcony deck and caused water to collect between the first and second layers of the deck. This water intrusion has resulted in degradation to balcony decks . . . .
>
> The aforementioned defects and deficiencies have caused and will continue to cause resultant and consequential property and other damages to Claimant, as well as monetary damages related to associated with remediation efforts.

3

(Dkt. #26-3 at 1.)

In light of the Notice of Claim, on or about June 25, 2019, Weitz tendered its claim under the HCC policy. (Dkt. #26 at 6, ¶ 15.)[1]

On July 3, 2019, the Owner issued a Colo. R. Evid. 408 Settlement Communication to Weitz, which Weitz then provided to HCC. (Dkt. #26 at 6, ¶¶ 17–18.) The Owner's Rule 408 notice included a letter from its expert, Vertex. Vertex provided preliminary observations about the issues it noted on two of the defective balconies. (Dkt. #38 at 4, ¶¶ 8–9 (citing Dkt. #27, June 28, 2019 Vertex Letter. at 3–4).)[2] This initial Vertex letter, dated June 28, 2019, identified four "as-built" issues with the balconies: (1) the fascia boards were not sealed at abutting members, (2) a gap at the bottom of the fascia boards and the metal flashing was, however, sealed, trapping matter that had migrated behind the fascia boards, (3) the self-adhering flashing membrane was reverse lapped, (4) the lag screws securing the balcony to the framing were not properly sealed. Vertex also found "separations, staining and soffit damage" at other balconies.

Network Adjusters, HCC's claims adjuster, responded to the Rule 408 Notice on August 21, 2019, and advised that it would be retaining defense counsel for Weitz. (*Id.* at ¶ 19.) However, on October 21, 2019, HCC denied coverage for Weitz's claim because there is no "property damage," which would be required for payment under the

---

[1] There is some dispute whether HCC actually received this Notice of Claim, because no one from HCC or Network Adjusters, HCC's claims adjuster, was copied on the tender. (Dkt. #35 at 3, ¶ 15.) Ultimately, whether HCC actually received this claim contemporaneously on June 25, 2019 is irrelevant to this motion for summary judgment.

[2] This document is filed under restriction.

4

policy. The claimed damage was only to defective work itself. (Dkt. #26 at 6, ¶ 22; Dkt. #26-9 at 14.)[3]

On January 9, 2020, Vertex issued another report. (*See* Dkt. #26-13; Dkt. #35-4; Dkt. #38-4.)[4] This report found the following problems with the balcony: (1) "the construction of the exterior claddings, balcony toppings and associated flashings at the balcony-to-wall intersections . . . was defective," (2) "the installation of the main water-resistive barrier of the balcony deck . . . was not properly integrated with the water-resistive barrier of the exterior wall of the building," (3) "the installation of the self-adhered flexible flashing at the balcony corners was not installed as specified in the Architectural plans," and (4) "the construction of the edge flashing for the balcony topping was inadequate." (*Id.* at 13–14.)

In June 2021, the Owner reported additional issues with the balconies, and Weitz notified HCC. (Dkt. #26 at 7, ¶¶ 23–24.) Indian Harbor claims that the additional damage included "damage to the underside of the balconies, soffits, traffic coating." (*Id.* at ¶ 25.) HCC argues that this statement does not provide any evidence of additional

---

[3] Separately, by letter dated September 13, 2019, HCC's counsel denied coverage on the Owner's claim. (*Id.* at ¶ 20; Dkt. #26-7 Coverage Denial Letter to Owner.)

[4] Indian Harbor argues that the January 9, 2020 Vertex report is not authenticated and thus inadmissible. (*See* Dkt. #45 at 4; Dkt. #46 at 4.) This objection is disingenuous as Indian Harbor itself attached and then cited the January 9, 2020 Vertex report to its Motion for Summary Judgment. (*See* Dkt. #26-13; Dkt. #26 at 10–11). Thus, the Court will consider this document when ruling on the cross-motions for summary judgment. The Court notes that Indian Harbor also objected to HCC's Settlement Agreement between the Owner and Weitz. (Dkt. #36.) HCC has entirely failed to authenticate this document, and, unlike the January 2020 Vertex report, Indian Harbor does attach it to or rely on it in its own briefing. Thus the Court will not consider the Settlement Agreement. *See* Fed. R. Civ. P. 56(c); *see also Bell v. City of Topeka, Kan.*, 496 F. Supp. 2d 1182, 1184 (D. Kan. 2007) (citations omitted), *aff'd sub nom. Bell v. City of Topeka, Kan.*, 279 F. App'x 689 (10th Cir. 2008).

alleged damage. HCC again denied coverage to Weitz. (Dkt. #26 at 7, ¶ 26; Dkt. #26-11.)

Indian Harbor moves for partial summary judgment, requesting that the Court hold as a matter of law that (1) the HCC's CGL policy covers "property damage" caused by an "occurrence", which extends to all damages resulting from faulty work, including damage to the insured's work and rip/tear; (2) that HCC had a duty to defend Weitz in response to the Notice of Claim issued by the Owner pursuant to the Colorado Construction Defect Action Reform Act ("CDARA"); and (3) that the subcontractor default policy issued by Indian Harbor is excess to the policy issued by HCC. As to the first issue, Indian Harbor argues that damage to the defective work itself is "property damage." Indian Harbor further argues that the entire balcony is not rendered defective simply because one building component (i.e., the flashing) was defectively installed.

HCC moved for cross-summary judgment on this first issue as well, arguing that the defectively installed balconies and subsequent damage to the defective work is not "property damage" under Colorado law. Contrary to Indian Harbor's position, HCC argues that the Court should not parse between different components of the balcony but instead treat the balcony as a whole. Thus, according to HCC, because the balcony was defective, all damage was to already defective property.

## LEGAL STANDARDS

### A. Summary Judgment

The purpose of a motion for summary judgment pursuant to Fed. R. Civ. P. 56 is to assess whether trial is necessary. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Under Fed. R. Civ. P. 56(c), summary judgment shall be granted if "the

6

pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." An issue is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 277 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the case under the governing substantive law. *Id.* The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Concrete Works, Inc., v. City & Cnty. of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

"The burden of showing that no genuine issue of material fact exists is borne by the moving party." *Adamson v. Multi. Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008) (citations omitted). If the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy this burden by identifying "a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* (citation and internal quotations omitted).

When faced with cross-motions for summary judgment, the Court is "entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts." *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (internal citations and quotations omitted). Further, "[b]ecause the determination of whether there is a genuine dispute as to a material factual issue turns upon who has the burden of proof, the standard of proof and whether adequate evidence has been submitted to support a prima facie case or to establish a genuine dispute as to material

fact, cross motions must be evaluated independently." *In re Ribozyme Pharmaceuticals, Inc., Securities Litig.*, 209 F. Supp. 2d 1106, 1112 (D. Colo. 2002); *see also Atl. Richfield Co.*, 226 F.3d at 1148; *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979) ("Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another.").

## ANALYSIS

In Colorado, the interpretation of an insurance policy is a matter of law. *Auto-Owners Ins. Co. v. High Country Coatings, Inc.*, 388 F. Supp. 3d 1328, 1333 (D. Colo. 2019) (referencing *Thompson v. Md. Cas. Co.*, 84 P.3d 496, 501 (Colo. 2004)). Since the interpretation of an insurance policy presents a question of law, it is appropriate for summary judgment. *Mt. Hawley Ins. Co. v. Casson Duncan Constr., Inc.*, 409 P.3d 619, 621 (Colo. App. 2016). Courts "construe insurance policies using general principles of contract interpretation." *Greystone Const., Inc. v. Nat'l Fire & Marine Ins. Co.*, 661 F.3d 1272, 1283 (10th Cir. 2011), *as amended on reh'g in part* (Dec. 23, 2011) (citations omitted). Absent ambiguity, the Court construes a policy's language according to its plain meaning. Ambiguous provisions are construed against the insurer in favor of providing coverage to the insured. *Id.* That said, "Courts should read policy provisions as a whole rather than in isolation and may not 'extend coverage beyond that contracted for, nor delete [provisions] to limit coverage.'" *Peerless Indem. Ins. Co. v. Colclasure*, No. 16-cv-424-WJM-CBS, 2017 WL 633046, at *3 (D. Colo. Feb. 16, 2017) (quoting *Cyprus Amax Mins. Co. v. Lexington Ins. Co.*, 74 P.3d 294, 298 (Colo. 2003)).

As District Judge William J. Martinez has explained:

> Under a commercial general liability ("CGL") policy . . . the initial burden is upon the insured to show that the loss sustained comes within the terms of

8

the insurance policy; in other words, the insured has the burden to prove a material issue of fact exists concerning their entitlement to recovery under the insurance policy. *See Rodriguez v. Safeco Ins. Co.*, 821 P.2d 849, 853 (Colo. App. 1991). Then, once the insured claims a loss covered by the policy, the burden is on the insurer to prove that the policy excludes the proximate cause of the loss. *Leprino Foods Co. v. Factory Mut. Ins. Co.*, 453 F.3d 1281, 1287 (10th Cir. 2006); *see also* 17A Steven Plitt et al., *Couch on Insurance* § 254:52 (3d ed., Dec. 2016 update) (discussing burden of proof in the context of general liability insurance).

Because Indian Harbor seeks reimbursement for funds it paid out when HCC denied coverage under the CGL policy, Indian Harbor stands in the shoes of the insured and bears the burden to demonstrate that the claimed loss comes within the terms of HCC's CGL policy.

Resolution of the cross-motions for summary judgment turns first on whether the installation of the defective balconies constitutes "property damage" under the HCC CGL policy and Colorado law. If the damage in this case is not "property damage," there is no coverage and no duty to defend. *See Greystone Const., Inc.*, 661 F.3d at 1287 n.10 ("[T]he existence of property damage is a threshold issue. Without property damage, it is irrelevant whether there was an 'occurrence' or 'accident.'").

The Court briefly addresses Indian Harbor's contention that the CDARA resolves this issue. The CDARA, enacted in 2010, provides:

> In interpreting a liability insurance policy issued to a construction professional, a court shall presume that the work of a construction professional that results in property damage, including damage to the work itself or other work, is an accident unless the property damage is intended and expected by the insured. Nothing in this subsection (3):
>
> (a) Requires coverage for damage to an insured's own work unless otherwise provided in the insurance policy; or
>
> (b) Creates insurance coverage that is not included in the insurance policy.

9

Colo. Rev. Stat. § 13-20-808(3). Thus, Indian Harbor argues, "work that results in property damage, <u>including damage to the work itself</u>, is an accident unless the property damage was expected or intended by the insured." (Dkt. #26 at 10 (emphasis in original).) But asking whether there was an accident without considering whether there is "property damage" misses the point. Where there is no "property damage," it is irrelevant whether there was an "accident" or "occurrence."

### A.  "Property Damage" under Colorado Law

HCC's CGL Policy provides coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." (Dkt. #26-2 at 15.) In relevant part, HCC's CGL policy defines "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property." (*Id.* at 32.)

Importantly, and fatal to Indian Harbor's case, a subcontractor's defective work and damage to its own defective work product are not "property damage" under the policy and Colorado law. First, the Court notes that "deficient performance by a subcontractor [is] not in itself an event triggering application of a CGL policy." *Greystone Const., Inc.,* 661 F.3d at 1286 n.10 (citing *Adair Group, Inc. v. St. Paul Fire & Marine Ins. Co.*, 477 F.3d 1186, 1188 (10th Cir. 2007). Instead, to trigger coverage under a CGL policy, the deficient performance must result in damage to *nondefective* third-party work product. Put differently, "injuries flowing from improper or faulty workmanship constitute an 'occurrence' so long as the resulting damage is to nondefective property . . . ." *Id.* at 1284.

10

In *Colorado Pool Systems, Inc. v. Scottsdale Insurance Co.*, 317 P.3d 1262 (Colo. App. 2012), the insurer refused to indemnify a general contractor for losses resulting from demolishing and replacing an improperly constructed pool. *See id.* at 1265. Applying *Greystone,* the Colorado Court of Appeals found that there were two types of property damage: (1) the cost of replacing the defective pool, and (2) consequential, or "rip and tear," damage to nondefective third-party work. *Id.* at 1271. The court found that the policy did not cover the first category of damages—damage incurred in demolishing and replacing the pool itself. "This damage resulted solely from [the general contractor's] obligation—necessarily expected—to replace defective work product." *Id.* (citing *Greystone Const., Inc.*, 661 F.3d at 1286). The second category of damages, however, was covered. *Id.* Put differently, "'property damage' does not include costs of repair or replacement of defective workmanship, but does include consequential damage to other parts of the property." *Peerless Indem. Ins. Co. v. Colclasure,* No. 16-cv-424-WJM-CBS, 2017 WL 633046, at *6 (D. Colo. Feb. 16, 2017) (applying *Colorado Pools* and finding that damage for repair and replacement of defective arena roof was not "property damage").

Indian Harbor correctly notes the Colorado Court of Appeals found that CDARA did not apply to the policy at issue in that case, but cites the court's dicta, which explained: "If we were to apply [CDARA], we would presume that the CGL policy covered damage that resulted from [the general contractor's] defective workmanship, including the cost of demolishing and replacing the pool." 317 P.2d at 1268. Relying on this language, Indian Harbor states "It seems that the Colorado Court of Appeals' view is that if there is damage, under the Statute, there is coverage, which is exactly what is

11

alleged here." (Dkt. #45 at 8.) The Court gives some weight to a state court of appeals decision but need not treat it as binding authority. *See Clark v. State Farm Mut. Auto. Ins.*, 319 F.3d 1234, 1240–41 (10th Cir. 2003) (explaining that a federal district court is "not bound by a lower state court decision," but may consider such decisions when interpreting Colorado law). The Court does not afford this language great weight. It is not only dicta, but it presupposes, without explanation, the existence of *property damage*. The Court agrees that CDARA creates a presumption, but the presumption is that property damage is an accident, not that all damage is "property damage."

### B.  "Property Damage" at the Project

The next question, then, is whether the work here resulted in "property damage." There is no dispute that in June 2019 (1) the fascia boards were not sealed at abutting members, (2) a gap at the bottom of the of the fascia boards and the metal flashing was, however, sealed, trapping matter that had migrated behind the fascia boards, (3) the self-adhering flashing membrane was reverse lapped, (4) the lag screws securing the balcony to the framing were not properly sealed. (*See* Dkt. #38 at 4, ¶¶ 8–9.) There is also no dispute that, in January 2020, Vertex found (1) "the construction of the exterior claddings, balcony toppings and associated flashings at the balcony-to-wall intersections . . . was [sic] defective," (2) "the installation of the main water-resistive barrier of the balcony deck . . . was not properly integrated with the water-resistive barrier of the exterior wall of the building," (3) "the installation of the self-adhered flexible flashing at the balcony corners was not installed as specified in the Architectural plans," and (4) "the construction of the edge flashing for the balcony topping was inadequate." (Dkt. #26-13 at 13–14.)

Though Indian Harbor admits the existence of the issues with the balcony installation, it argues that a defective component does not render the entire balcony defective. At oral argument, for example, Indian Harbor argued that there was nothing defective about the soffits of the balcony, but that such soffits had or will have to be replaced as part of the repair to the defective work. Thus, according to Indian Harbor, because the soffits (and potentially other components) are nondefective property, there has been "property damage."

The Court does not agree.

Such a labored analysis of individual components is not required by Colorado precedent. In *Colorado Pools*, the pool was defective because some of the rebar frame of the concrete shell was too close to the surface of the pool. 317 P.3d at 1266. The court found that the cost of demolishing and replacing the pool was not "property damage" and thus not covered by the CGL policy. It did not parse out the various components of contractor's work on the pool itself. Instead, as previously articulated, only rip and tear damage to *nondefective third-party work*—damage to the deck, sidewalk, etc.—was covered.

In *Peerless*, the defendant improperly repaired and replaced a roofing system that had been damaged by hail. The court found that the CGL policy did not "provide coverage for the cost to repair or replace the arena roof because such damages do not constitute 'property damages' under Colorado law." 2017 WL 633046, at *5. Again, the court did not parse out the individual components of the roof that the subcontractor installed. Because the damage to the arena roof was not damage to nondefective third-party work, it was not covered by the CGL policy.

13

Applying the analysis of *Colorado Pools* and *Peerless,* the Court finds that the subcontractor must fix its defective work product, even though not every aspect or component of its installation was deficient, and that the CGL does not provide coverage for those repairs. The mere fact that the soffits on the balcony are not defective but must be replaced as part of remedying other defects does not bring the damage within the coverage of the CGL policy. Surely, in *Peerless*, not every component of the roof that the contractor installed, down to each individual nail, was defective when the roof had to be replaced due to faulty workmanship. Nonetheless, there was no coverage when the contractor had to fix damage to its own defective work.

The appropriate inquiry is whether there is damage to nondefective third-party work. Here, Indian Harbor can point to no evidence of consequential damage to support a finding in its favor as a matter of law (or to overcome HCC's argument that there is *no evidence* of consequential damage, and thus no genuine dispute of material fact.), such as damage to the doors from the apartments into the balcony, exterior paint, etc.[5] Based on the undisputed facts, the Court finds that all damage to the defective balconies, including damage suffered as a result of remediation or repair efforts, is simply damage to the subcontractor's own defective work. Indian Harbor's reliance on mere allegations and conclusory statements of consequential and rip/tear damages in the Notice of Claim are insufficient to create a genuine dispute of material fact as to this issue. (*See, e.g.*, Dkt. #46 at 13, 17.) Indian Harbor had an opportunity to demonstrate

---

[5] Indian Harbor argues that the January 9, 2020 Vertex report evidences rip/tear damage. (*See* Dkt. #46 at 17.) However, even Indian Harbor characterizes this as evidence of rip/tear to "*components of the balcony other than the flashing.*" (*Id.* (emphasis added).) There is no suggestion that it is damage to nondefective third-party work, so it is not "property damage" under Colorado law.

damage to nondefective third-party work or at least show a genuine dispute of material fact concerning this issue, but it failed to do so.  Thus, Indian Harbor has not met its burden of establishing "property damage"—a threshold question and essential element of its claim. Without "property damage," the Court cannot find that HCC had a duty to defend, nor that the Indian Harbor subcontractor default policy is excess to the HCC CGL policy. Accordingly, Indian Harbor's motion for partial summary judgment should be denied in its entirety.

With respect to HCC's cross-motion for summary judgment, the Court finds that HCC, who does not bear the burden of persuasion at trial, has met its burden at summary judgment to establish an absence of a genuine dispute of material fact as to the existence of "property damage." *See Adamson*, 514 F.3d at 1145. To prevent the grant of summary judgment, Indian Harbor needed to set forth admissible evidence establishing the existence of "property damage." It failed to do so. Because there is no coverage when there is no property damage, and Indian Harbor's four claims are premised on a finding that coverage exists, HCC's motion for summary judgment should be granted.

## CONCLUSION

In light of the foregoing, it is hereby **RECOMMENDED** that Indian Harbor Insurance Company's Partial Motion for Summary Judgment (Dkt. #26) be **DENIED** and Houston Casualty Company's Cross-Motion for Summary Judgment (Dkt. #38) be **GRANTED.**

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve**

**and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives de novo review of the recommendation by the District Judge,** *Thomas v. Arn***, 474 U.S. 140, 148– 53 (1985), and also waives appellate review of both factual and legal questions.** *Makin v. Colo. Dep 't of Corrs.***, 183 F.3d 1205, 1210 (10th Cir. 1999);** *Talley v. Hesse***, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date: July 5, 2022

_____
N. Reid Neureiter
United States Magistrate Judge